IN RE APPLICATION OF THE McDANIEL MOTOR COMPANY.

(No. 1126—Decided February 14, 1962.)

Messrs. *Moloney & Kelly,* for appellees.
Messrs. *Donithen, Michel & Davis,* for appellant.

GUERNSEY, P. J. This action originated as an appeal filed with the Board of Zoning Appeals of Marion Township, Marion County, Ohio, by certain interested neighboring property owners, hereinafter called neighbors, claiming error by the township zoning inspector in the granting to The McDaniel Motor Company, Inc., hereinafter called the company, of a permit to construct a building on premises owned by the company to be used for a general new and used car sales and service business. The board, after hearing, by order duly entered, affirmed the

action of the zoning inspector. The neighbors then appealed to the Common Pleas Court of Marion County, Ohio, under the provisions of the statutes governing administrative appeals, Section 2506.01 *et seq.*, Revised Code.

The court held and determined that under the zoning resolution of Marion Township commercial zones are classified as general commercial districts and limited commercial districts in which are permitted certain specified types of business and in which are prohibited noxious trades, defined therein; that the zoning resolution "states 'that it is the intent of this resolution to maintain the general character of every neighborhood that has already been established' "; that the findings, decisions and orders made by the board of zoning appeals are "illegal, arbitrary, unreasonable and not supported by the preponderance of the evidence"; and that the decisions of the board are reversed and vacated:

The court did not find that the premises in question were located in any particular zoning district or subject to any particular zoning classification, that the business in question was either permitted or prohibited by the zoning resolution, or that it constituted a noxious trade as therein defined. Nor did the court make any finding as to the established general character of the neighborhood in question. It is not apparent, therefore, upon what basis the court determined that the findings, decisions, and orders of the board were "illegal, arbitrary, unreasonable and not supported by the preponderance of the evidence."

From the judgment of the Common Pleas Court the company prosecuted its appeal to this court, assigning error in six particulars, which, since they were not separately argued, will be summarized as an assignment that the judgment is contrary to law.

Examination of the proceedings before the board and in the Court of Common Pleas indicates that the appeals therein were each tried as if the premises were located in a limited commercial district and the evidence adduced related primarily to the character of the business which the company proposes to conduct on the premises, and as to the character of the neighborhood. It does not affirmatively appear that the board or the court determined, or merely proceeded on the assumption, that

the premises were located in a limited commercial district. But for such reasons alone it cannot be said that this issue was not before both the board and the court. It was necessarily before them for the board and the Common Pleas Court would have to conclude which zoning classification was applicable to the premises before they could properly apply the other provisions and limitations of the zoning resolution to such property.

There are no pleadings herein, as in the usual civil action, where one party alleges that the property is in a particular zone and the other party admits or denies same. The application for a zoning permit shows that the building to be constructed is a "limited commercial" building but does not show that the premises are zoned in any particular manner. Notwithstanding that counsel for the company makes objection to the admission in evidence in the Common Pleas Court of a map offered by the neighbors for the reason that it does not show that all of State Route No. 95 is zoned as limited commercial there is no place in the record that the company, or its counsel, specifically says that the premises in question are located in a limited commercial zone. If, as contended by the attorney for the neighbors, such were the case, it would still be at best a legal conclusion or stipulation of law not ordinarily binding upon a court. Whether a particular property is located in a particular zone is a mixed question of law and fact. Its geographical location is a matter of fact but whether that location is by operation of a zoning resolution included within a particular zoning classification prescribed in that zoning resolution is a matter of law, which is ordinarily for the court. As stated in 83 Corpus Juris Secundum, 14, Stipulations, Section 10:

"It is generally held that it is not competent for the litigants to stipulate as to what the law is so as to bind the court, and that such stipulations will be disregarded; * * *."

If this were not the case courts would spend much of their time rendering judgments as to hypothetical issues rather than as to justiciable controversies.

We are therefore of the opinion that, in the absence of a finding to the contrary, it was implicit in the decision and order of the board of zoning appeals that, in order to apply the restrictions and limitations of the zoning resolution, it had first determined which classification of zoning, as provided by the

resolution, was applicable to the premises. This same question was reserved to the Court of Common Pleas *on appeal,* and, in the absence of a finding in its entry of judgment to the contrary, it is also implicit in its judgment that it had determined that the board of zoning appeals had either committed error in its decision as to which zoning classification was applicable, or had rightfully determined the zoning classification but erroneously applied the law as to the character of uses permitted or prohibited under such classification. The first ruling against the company on this question of law was thus in the judgment of the Court of Common Pleas which was duly excepted to. For these reasons we are of the opinion that this issue is available in this court in this appeal on questions of law.

This being the case, our first concern is in determining which zoning classification is applicable to the premises in question. It is a matter of fact beyond dispute that the premises in question are located in Marion Township abutting the south side of State Route No. 95 and east of the corporate limits of the city of Marion. With respect to zoning classification the following portions of the zoning resolution of Marion Township, adopted effective November 6, 1956, are pertinent for consideration:

"The Board of Township Trustees of Marion Township, Marion County, Ohio, does hereby resolve to regulate * * * the uses of buildings and other structures * * * and the uses of land for trade, industry, residence, recreation or other purposes in the unincorporated territory of Marion Township, Marion County, Ohio, as shown on a map marked 'Official Map of Marion Township Zoning Resolution,' which is herewith incorporated by reference in this resolution and made a part hereof.
"* * *

*"Section II*

"There are hereby created 'Commercial Zones' for Marion Township, Marion County, Ohio, which said Commercial Zones shall be limited to certain highway frontage areas and shall be of two types designated as follows:

"A. *General Commercial Districts*
"B. *Limited Commercial Districts*

"*Limited Commercial Districts* shall comprise the highway frontage on the following highways: State Route No. 95, east

from the city of Marion corporation line to East Township line, Marion County, Ohio. * * *
"* * *

"*Section IIA*

"There is hereby created a 'Residential Zone' which includes all territory not included in the Industrial and Commercial Zones for Marion Township, Marion County, Ohio, * * *"

The zoning resolution, in pamphlet form, was offered in evidence in the lower court by the neighbors and it was there stipulated by the company to be a "copy of the zoning regulations." The pamphlet did not include nor contain any map marked "Official Map of Marion Township Zoning Resolution," but did contain a map on which appear various legends and markings purporting to show the "zones" described in the text of the zoning resolution. With respect to the property in question the map shows a straight line of dashes along the south edge of State Route No. 95 running from the corporate limit of the city of Marion to the east line of Marion Township. This line neither angles nor turns in any other direction and, of course, does not enclose any property. The legend on the map identifies a line of this character as "Limited Commercial Districts." The neighboring property owners, appellees herein, would have this court not consider the map received in evidence as part of a copy of the zoning resolution offered by them for the reason that it is not marked as the "Official Map." Their contention in this respect has some merit, but as the map included in the pamphlet with the zoning resolution is, with reference to the property in question, entirely consistent with the text of the zoning resolution, its use can neither add to, detract from, nor change the application of the zoning resolution.

They would then insist that this court would be unable to determine the zoning districts without reference to the "Official Map." Were we to yield to this contention we would also be required to find that the Court of Common Pleas had committed error by determining a zoning classifiaction without having the "official map" in evidence before it. The statutes dealing with township zoning, Section 519.01 *et seq.*, Revised Code, refer to "a zoning plan, including both text and maps" (Section 519.05), "the proposed zoning resolution, including text and maps" (Section 519.07), "text or maps" (Section 519.09), but nowhere

170

prescribe the content of the map or maps. The enacting clause of the resolution herein states that "the Board of Township Trustees * * * does *hereby resolve* to regulate * ** the uses of buildings * * * and the uses of land * * *, *as shown* on a map * * *, which is herewith incorporated by reference in this resolution and made a part hereof." It necessarily follows from this phraseology that in this case the districts or zones are created solely by the text of the resolution and are merely shown on the "official map," that, as between the two, the instrument of creation, rather than that merely of illustration, would control. We may, therefore, in the absence of the official map, properly refer only to the textual matter of this resolution to determine which zoning classification, if any, is applicable to the premises in question. See, also, *Cassell* v. *Lexington Twp. Board of Zoning Appeals* (1955), 163 Ohio St., 340.

Thus referring we find that "limited commercial districts shall comprise the *highway frontage* on * * * State Route No. 95" (emphasis added), whereas the residential zone "includes all territory not included in the Industrial and Commercial Zones." The word "frontage" is variously defined. In ordinary definition it denotes *the line of demarcation* between private property and that open to the general use of the public. 37 Corpus Juris Secundum, 1387, Frontage. In Webster's New International Dictionary, Second Edition, the first definition given is:

"The front part of an edifice or lot; extent of front, as of land along a stream or a road; also, the land between the front of a building and the street."

No definition that we have been able to find gives to the word frontage any meaning as to specific depth or area, nor is there anything in the zoning resolution herein providing a standard for zoning inspectors, officials or boards, to determine the extent or boundaries of the limited commercial district. As stated by the Supreme Court of Pennsylvania in the case of *Taylor* v. *Moore* (1931), 303 Pa., 469, 477, 154 A., 799, 802:

"* * * As we examine the general borough plan we have difficulty in locating the land intended to be included in given districts. The ordinance does not try to locate property within given lines, *but attempts to erect districts by designating properties abutting on certain streets without other boundaries.* As

the court below says, it is quite possible that it might become very difficult in fact to define the extent of the commercial district in accordance with the terms of the ordinance. For instance, a lot may be located between a street designated as commercial and a particular street not so designated and within the terms of the residential district, yet the lot would abut on both streets. This is so even of an ordinary lot; how far within the limits of the lot the property owner can respect the residential district, and how much he can respect the commercial district, is not clear; the character, distance, or size of the lot only aggravates the question. Similar uncertainties might arise with respect to corner lots. Here there is no shape or area, * * *.

" * * *

" * * * Where a zoning ordinance permits officials to grant or refuse permits without the guidance of any standard, but according to their own ideas, it does not afford equal protection. It does not attempt to treat all persons or property alike as required by the Zoning Act. While the exercise of discretion and judgment is to a certain extent necessary for the proper administration of zoning ordinances, this is so only where some standard or basis is fixed by which such discretion and judgment may be exercised by the board. Where a zoning ordinance is vague and indefinite, it cannot be sustained as valid under the authorizing act." (Emphasis added.)

Although in *State* v. *Huntington* (1958), 145 Conn., 394, 143 A. (2d), 444, the manner of districting was by adopting existing uses, the Supreme Court of Errors of Connecticut held, at page 399:

" * * * The districts must be described with reasonable certainty and must have definite boundaries so that the regulations may be practically applied. The district lines and boundaries must be fixed by the regulations and not by administrative officials or courts. In other words, the fixing of boundary lines between districts is a legislative function. * * *"

See, also, *Auditorium, Inc.*, v. *Board of Adjustment of Mayor and Council of Wilmington* (1952), 47 Del., 373, 91 A. (2d), 528, and 8 McQuillin, Municipal Corporations (3rd Ed., Rev.), 207, Zoning, Section 25.90.

The principles of law thus expressed have been applied in Ohio by the Court of Appeals for Cuyahoga County in the case

of *Village of Westlake* v. *Elrick* (1948), 83 N. E. (2d), 646, holding a village zoning ordinance invalid because of uncertainty of location, boundaries and areas of zoning districts, and by the Supreme Court in the case of *Cassell* v. *Lexington Twp. Board of Zoning Appeals, supra* (163 Ohio St., 340), holding that a township zoning commission acted arbitrarily and unreasonably in refusing to issue zoning permits when the zoning resolution was so indefinite in its establishment of zones as to constitute a comprehensive plan.

In the instant case the zoning resolution does not set forth the location, boundaries and areas of the limited commercial district with such certainty that it can be determined that the company's premises are located therein and thus subject to the classification of uses pertaining to such zone. As it cannot be determined whether the subject premises are located within the limited commercial district it does not follow, and it cannot be determined, that they are located in the residential zone. The residential zone "includes all territory *not included* in the Industrial and Commercial Zones." (Emphasis added.) If the commercial zones cannot be determined neither can the residential.

It is our opinion and judgment that, *as applied to the premises in question*, the zoning resolution herein is invalid by reason of the indefiniteness and uncertainty of location, boundaries and areas of the zoning districts, and that neither the zoning inspector nor the board of zoning appeals could legally refuse to issue the zoning permit to the company for the construction of a building on such premises to be used for a general new and used car sales and service business.

Our decision and judgment does not bear on the issue of whether the resolution was unconstitutional in its enactment, as its invalidity arises, apart from constitutional considerations, in its being too indefinite and uncertain in its provisions when considered in its application to the subject premises to constitute a valid enactment under the provisions of the enabling legislation. Under these circumstances any presumption as to constitutionality, as claimed by the appellees, does not pertain. As its application to other premises was not before us, our findings and determinations herein do not extend to other applications notwithstanding that they indicate reservations as to the validity of the resolution when otherwise applied.

The decision of the board of zoning appeals affirming the action of the zoning inspector is affirmed and the judgment of the Court of Common Pleas reversing such decision is itself reversed, all at the costs of the neighboring property owners, appellees herein.

*Judgment reversed.*

MIDDLETON and YOUNGER, JJ., concur.