[Cite as *State v. McLeod*, 2012-Ohio-1797.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-22 |
| MATTHEW MCLEOD | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Mount Vernon
Municipal Court, Case No. 10TRC5894

JUDGMENT: Vacated and Remanded

DATE OF JUDGMENT ENTRY: April 19, 2012

APPEARANCES:

For Plaintiff-Appellee

P. ROBERT BROEREN, JR.
5 North Gay Street, Ste. 222
Mount Vernon, OH 43050

For Defendant-Appellant

TIMOTHY HUEY
1985 West Henderson Road, #204
Upper Arlington, OH 43220

SARAH M. SCHREGARDUS
492 City Park Avenue
Columbus, OH 43215

*Gwin, P.J.*

**{¶ 1}** Appellant, Matthew McLeod, appeals the April 22, 2011 judgment entry of the Mount Vernon Municipal Court overruling his motion to suppress evidence.

**{¶ 2}** Appellee, the State of Ohio did not file a brief in this matter. Pursuant to App.R. 18(C), in determining the appeal, we may accept appellant's statement of the facts and issues as correct, and reverse the judgment if appellant's brief reasonably appears to sustain such action. See *State v. Rohrig,* 5th Dist. No. 00 CA 39, 2001 WL336315 (Apr. 2, 2001), and *Chowdhury v. Fitzgerald,* 5th Dist. No. 96 CA 43, 1997WL219172 (Mar. 27, 1997). Therefore, we presume the validity of appellant's statement of facts and issues.

**{¶ 3}** At the evidentiary hearing on appellant's motion to suppress held April 12, 2011, the following facts were established.

**{¶ 4}** Trooper Samuel Criswell was traveling southbound on South Main Street in Mount Vernon. He observed appellant's vehicle around 1:20 a.m. Trooper Criswell stopped appellant's vehicle, conducted an OVI investigation and arrested appellant. Appellant was charged with Operating a Vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511,19(A)(1)(d), as well as Operating a Vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Trooper Criswell, handcuffed appellant and placed him in the back of the cruiser at approximately 1:31 a.m. The trooper left appellant unattended while the trooper talked to the passenger in appellant's car until approximately 1:34 a.m. Trooper Criswell then transported appellant to the Knox County Sheriff's Office.

**{¶ 5}** At the Sheriff's Office, after reviewing the BMV 2255 Form, appellant agreed to submit to a breath test. He took the test at 1:51 a.m. and the results indicated .120. According to Trooper Criswell, he testified that he began observing Mr. McLeod at 1:20 a.m. No testimony was presented that appellant was asked if he had placed anything in his mouth before the initiation of the breath test.

**{¶ 6}** Appellant testified that after he was arrested and placed in the back of the cruiser, he found a penny in his back pocket while the trooper was talking to the passenger. Appellant placed the penny in his mouth by getting it out of his back pocket with his hand that was handcuffed behind his back and placing the penny on the seat, leaning over and picking up the penny with his mouth. He kept the penny in his mouth until they arrived at the police station, at which time he spit the penny onto the floor of the cruiser. The defense then submitted the BAC DataMaster Operator Guide and rested.

**{¶ 7}** After the hearing, the trial court denied appellant's motion. In its entry, the court concluded that the penny appellant placed in his mouth would not have affected the breath alcohol test.

**{¶ 8}** On October 3, 2011, appellant entered a plea of no contest to Operating a Vehicle with a prohibited concentration of alcohol in violation of R.C. 4511.19(A)(1)(d). The trial court found appellant guilty and imposed the following sentence: a fine of $500, a three-year driver's license suspension to be terminated once he served a total of 180 days of the suspension, five years of community control, and he was required to complete a 3-day Driver Intervention Program. The charge for violating R.C. 4511.19(A)(1)(a) was dismissed by the court.

**{¶ 9}**  It is from the trial court's April 22, 2011 Journal Entry denying his motion to suppress that appellant has appealed raising as his sole Assignment of Error,

**{¶ 10}** "I. WHERE, IN AN OVI PROSECUTION UNDER O.R.C. § 4511.19(A)(1)(D), THE TRIAL COURT FOUND THAT THE APPELLANT PLACED A PENNY IN HIS MOUTH WITHIN TWENTY (20) MINUTES OF A BREATH TEST BEING CONDUCTED, THE TRIAL COURT ERRED IN FINDING SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS AND IN NOT SUPPRESSING THE BREATH TEST RESULTS. O.R.C. § 4511.19 (D)(1)(A), O.R.C. § 3701.143, O.A.C. 3701-53- 01, O.A.C. 3701-53-02, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

I.

**{¶ 11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v.* Burnside, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law

whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶ 12} We therefore consider whether the facts in the instant case demonstrate substantial compliance with the Department of Health regulations under a de novo standard of review. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71 at 118.

{¶ 13} R.C. 4511.19(D) requires that the analysis of bodily substances be conducted in accordance with methods approved by the Ohio Director of Health, as prescribed in Ohio Administrative Code regulations. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, rigid compliance with ODH regulations is not required as such compliance is not always humanly or realistically possible. *State v. Plummer*, 22 Ohio St.3d 292, 294, 490 N.E.2d 902 (1986); *State v. Morton*, 12th Dist. No. CA98-10-131, 1999 WL 296700 (May 10, 1999). Rather, if the state shows substantial compliance with the regulations, absent prejudice to the defendant, alcohol tests results can be admitted in a prosecution under 4511.19. *Id.* In determining whether the state substantially complied with ODH regulations, the trial

court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Williams*, 82 Ohio App.3d 39, 610 N.E .2d 1188 (1982).

{¶ 14} In *Bolivar v. Dick,* 76 Ohio St.3d 216, 218, 667 N.E.2d 18, 1996-Ohio-409, the Supreme Court noted,

> R.C. 4511.19(D) states that any bodily substance collected for the purpose of determining whether a person is in violation of the statute 'shall be analyzed in accordance with the methods approved by the director of health * * *.' Regulations promulgated by the Director of Health in Ohio Adm.Code 3701-53-02(B) state in pertinent part that '[b]reath samples shall be analyzed according to the operational checklist for the instrument being used.' Thus, the operational checklist, which is part of the BAC Verifier Test Report Form (see Appendix A), provides the 'methods approved by the director of health' for the operation of the BAC Verifier.
>
> The first item on the operational checklist, which is part of the BAC Verifier Test Report Form, states 'Observe subject for twenty minutes prior to testing to prevent oral intake of any material." The Health regulations require that a test subject not ingest anything for 20 minutes prior to submitting to a Breathalyzer test. See Ohio Adm.Code 3701-53-02.

Id. at 218. *State v. Raleigh,* Licking App. No. 2007–CA–31, 2007-Ohio-5515, 2007 WL 2994237, at ¶ 47-48.

{¶ 15} In the case at bar, the DataMaster Basic Operator Guide, admitted as Defendant's Exhibit A, does not limit "foreign substance" to "food, gum or tobacco"; rather the manual states, in relevant part,

a. Check mouth of subject for food, gum tobacco, *or any other foreign substance.*

b. Observe subject for at least 15 minutes to be sure no food or drink is ingested.

c. Record observation start time on Evidence Ticket if your procedure requires same.

* * *

Id. at 5 (Emphasis added).

{¶ 16} This Court in *State v. Karns* 5th Dist. No. 97CA0002, 1998 WL 550708 (July 21, 1998) previously held that the substantial compliance standard is not applicable to the instant situation. In *Karns,* we held that the regulation is a bright line rule-either the subject did or did not have something in his mouth during the twenty (20) minute observation period. In that case, we held that because appellant had the chewing gum in her mouth during the twenty (20) minute observation period, there had not been compliance with the regulation. Therefore, appellant was not required to show prejudice before the results were inadmissible. In *Karns,* we held that the determination that such case scenario does not yield itself to a substantial compliance test is buttressed by the fact that the language of the regulation itself prohibits the intake of any material, not just material which may contain alcohol or otherwise may affect the test results. Our holding comports with our previous decision in *State v. Kirkpatrick* 5th Dist. No. 43-CA-87, 1998 WL 59437 (June 1, 1988), in which we concluded "that the twenty-minute observation period is mandatory and that there be no oral ingestion of

any material during that observation period." *Id.* at 8. *Accord State v. Baldridge,* 5th Dist. No. 01-COA-01412, 2001-Ohio-7029; *State v. Raleigh, supra.*

{¶ 17} In *State v. Steele,* 52 Ohio St.2d 187, 370 N.E.2d 740(1977), the Ohio Supreme Court explained the reason for the twenty-minute observational period before testing. It explained that the observational period is used to eliminate the possibility that the test result is a product of anything other than the suspect's deep lung breath. *Id.* at 190, 370 N.E.2d 740. The Court explained that since the "accuracy of the test results can be adversely affected if the suspect either ingests material internally, by belching or vomiting, the suspect must be observed" for twenty minutes to verify that no external or internal material causes a false reading. *State v. Douglas,* 1st Dist. No. C-030897, 2004-Ohio-5726, at ¶ 9, citing *Steele,* 52 Ohio St.2d at 190, 370 N.E.2d 740; *State v. Camden,* 7th Dist. No. 04 MO 12, 2005-Ohio-2718 at ¶ 15. In *Steele,* the court reasoned that once the trooper demonstrated it was highly improbable that the subject ingested any item during the twenty-minute period, it was up to the defendant to "overcome that inference" with proof that she had ingested some substance. Moreover, ingestion has to be more than just "hypothetically possible." *Steele,* supra at 192, 370 N.E.2d 740; see, accord, *State v. Faykosh,* 6th Dist. No. L-01-1244, 2002-Ohio-6241; *State v. Embry,* 12th Dist. No. CA2003-11-110, 2004-Ohio-6324 at ¶ 25; *State v. Rennick,* 7th Dist. No. 02 BA 19, 2003-Ohio-2560 at ¶ 25; *State v. Siegel*, 138 Ohio App.3d 562, 568-569, 741 N.E.2d 938, 942-943(2000).

{¶ 18} In the case at bar, the trial court found,

that "foreign substances" as used in the DataMaster Basic Operator's Guide means thing like "food, gum or tobacco," i.e. things that

are easily malleable or broken or cracked or crushed by the teeth, or that dissolve in the mouth or otherwise breakdown or interact with saliva. It does not include things like dentures, partial plates, caps crowns, gold fillings, silver amalgam filling, coins, rocks, nails or marbles. Food can and does breakdown into a multitude of minute particles that could interfere with the operation of the BAC machine. Likewise, use of gum and or tobacco increases the production of saliva which could result in a droplet of saliva entering the BAC machine and interfering with its operation. The Defendant has presented no expert testimony that presence of the penny in the Defendant's mouth during the twenty-minute observation period, but not during the time the test was being performed, had any effect on the machine's operation.

{¶ 19} Under the facts of the case at bar, the determination of whether appellant placed anything in his mouth during the twenty-minute observation period is a credibility determination. We note also that prior to administering the test, there is no testimony that appellant was asked if he had placed anything in his mouth during the twenty-minute observational period. Appellant did testify that he had put a coin into his mouth during this period.

{¶ 20} An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to re-evaluate the evidence or the credibility of the witnesses, *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981-982(1992), but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143-

1144(1993). Here, the Court believed the testimony of appellant as the presence of the coin in his mouth before the administration of the BAC test. Once appellant articulated this objection to the BAC test, the burden shifted to the state to demonstrate the presence of the coin had no effect on the test results. See *State v. Siegel*, 138 Ohio App.3d 562, 2000-Ohio-1747, 741 N.E.2d 938; *State v. Baldridge*, 5th Dist. No. 01-COA-01412, 2001-Ohio-7029; *Defiance v. Stafford,* 3rd Dist. No. 4-88-01, 1992 WL 24864 (Feb. 7, 1992),  *State v. Adams*, 73 Ohio App.3d 735, 598 N.E.2d 176(1992). A review of the record reveals that the state failed to present any evidence that the BAC results were not prejudiced by the presence of the coin in appellant's mouth during the twenty-minute observation period. Based on the foregoing, we find as a matter of law that the facts presented on appeal fail to meet the applicable legal standard and that the trial court erred in not suppressing the BAC results.

{¶ 21} Appellant's sole assignment of error is sustained. We hereby vacate appellant's conviction, reverse and remand this matter to the trial court for proceedings not inconsistent with this opinion.

By Gwin, P.J., and

Hoffman, J., concur;

Farmer, J., dissents

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER

WSG:clw 0308

Farmer, J., dissents

Although I acknowledge our previous decisions in *Karns* and *Baldridge* cited supra, I respectfully dissent from the majority's view.  As noted by the majority in citing the trial court's finding, the DataMaster Basic Operator's Guide excludes a "coin" as a foreign substance.  Because the Director of Health specifically adopts and approves the DataMaster test, I would find such an approval specifically includes the definition of "foreign substances" in the manual.

I would find a "coin" is not a foreign substance that would invalid the test and I would deny the assignment of error.


_____

HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MATTHEW MCLEOD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-22 |

For the reasons stated in our accompanying Memorandum-Opinion, Appellant's sole assignment of error is sustained. We hereby vacate appellant's conviction, reverse and remand this matter to the trial court for proceedings not inconsistent with this opinion. Costs to appellee.

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER